## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**HACHIKOSELA MUCHIMBA,**<br><br>**Defendant.** | **No. 23-mj-257** |

## UNITED STATES'S MEMORANDUM IN
## <u>SUPPORT OF PRETRIAL DETENTION</u>

The defendant stole more than $1.6 million from D.C. residents and knows that he is likely to be indicted by a grand jury.  The government provided the defendant and his counsel with a reverse proffer of its evidence and extended a pre-indictment plea offer.  But after hearing the strength of the government's case, the defendant rejected a pre-indictment plea offer and tried to flee the United States on a plane headed to Africa.  The government arrested the defendant at the airport just prior to his planned departure.  Obviously, the defendant poses a serious flight risk. The Court should order that the defendant be detained pursuant to 18 U.S.C. § 3142 pending further proceedings in this matter.

## BACKGROUND

The Affidavit in support of the criminal complaint ("Aff.") describes the defendant's scheme in vivid detail.  The defendant was a letter carrier with the U.S. Postal Service from February 2020 until he was placed on an off-duty (without pay) status in March 2023.  (Aff. ¶ 13.) His assigned mail route was Route 23 at the Friendship Post Office Station in Washington, D.C. (Aff. ¶ 13.)  Over the course of two years, the defendant stole checks—many of them U.S. Treasury checks—from the mail that were intended for delivery to residents of Washington, D.C.  (Aff.

¶ 19.)  He then deposited those stolen checks into bank accounts that he controlled at seven different financial institutions.  (Aff. ¶ 19.)  Some of those accounts were he in the defendant's own name; other accounts were held in the name of "Double Blue Investments," a limited liability company that he controlled.  (Aff. ¶¶ 5, 7,  9, 18.)  In total, the government has identified no less than 98 checks that the defendant misappropriated from postal customers with an aggregate value of $1,697,909.52 that were deposited into those accounts.  (Aff. ¶ 19.)  The government has obtained numerous bank surveillance photographs of Muchimba withdrawing stolen funds from his accounts.  (Aff. ¶¶ 10, 11.)  In many of those surveillance photographs, Muchimba can be seen wearing his U.S. Postal Service clothing typically worn by employees.  (Aff. ¶ 11.)

The government has learned during its investigation that the defendant recruited at least one other postal worker to assist him in his scheme.  (Ex. 1.)  That postal worker has admitted that Muchimba recruited her to steal checks for him.  (Ex. 1 at 2.)  In September 2023, Muchimba paid her $1,000 for stealing a check from the mail for him.  (Ex. 1 at 2.)  Muchimba paid her via CashApp about one week after she stole the check and gave it to him.  (Ex. 1 at 2.)

The government executed a search warrant at Muchimba's personal residence on March 29, 2023.  (Aff. ¶ 17.)  During that search, law enforcement recovered an ATM receipt that indicated Muchimba had deposited a misappropriated U.S. Treasury check in the amount of $415,173.53 a few days earlier at Sandy Spring Bank.  (Aff. ¶ 18.)  Muchimba withdrew approximately $13,000 of those funds before the government obtained a seizure warrant for the remining funds in that account on April 14, 2023. (Civ. Comp.[1] ¶ 3.)  Law enforcement also seized all personal identification documents that the defendant possessed in his residence at the time: a U.S. passport (Ex. 3 at 1); two expired passports issued by the Republic of Zambia (Ex. 3 at 2, 6);

---

[1] "Civ. Comp." refers to the verified complaint for civil forfeiture action *in rem* filed in *United States v. $402,669.95 Seized from One Sandy Spring Bank Account*, No. 23-cv-02527-RC (D.D.C.).

a current Zambian passport (Ex. 3 at 3); a Washington, D.C., driver's license (Ex. 4 at 4-5); a void Maryland driver's license (Ex. 3 at 5); and a Social Security card (Ex. 4 at 5). After law enforcement executed the search warrant at Muchimba's residence, the government invited the defendant and his counsel to meet at the U.S. Attorney's Office to discuss the matter.

On June 22, 2023, the government met with the defendant and his counsel at the U.S. Attorney's Office. The government presented the defendant with a fulsome overview of the evidence against him and the charges that a grand jury would consider. After that meeting, the government extended a pre-indictment plea offer to the defendant that would have resolved this matter without the need for grand jury action and the defendant's arrest. The government allowed the defendant until August 15, 2023, to consider the plea offer; the defendant did not accept the proposed resolution.

On August 29, 2023, the government filed a civil forfeiture complaint against the funds seized from Muchimba's Sandy Spring Bank account earlier this year.[2] On September 9, 2023, an article in The Washington Post reported on the filing of that civil matter and identified Muchimba as the postal worker who had stolen "around $1.7 million in checks" from D.C. residents. (Ex. 4.) The author of the article reported that the defendant "did not respond to requests for comment by mail and phone." (Ex. 4.)[3]

On September 19, 2023, law enforcement learned that the defendant had booked travel on an outbound flight to Zambia scheduled to leave from Dulles International Airport at 10:30 AM

---

[2] This separate civil forfeiture action was necessary because the defendant filed a claim against the funds seized from Sandy Spring Bank in which he asserted under penalty of perjury he was the "owner" of those funds with "a valid, good faith, and legally recognizable interest in this asset." (Ex. 2 at 8.)

[3] Other local media have separately reported on the civil forfeiture matter. *See, e.g.,* Lyons, Ivy, "DC postal employee steals nearly $1.7 million from residents, prosecutors claim," WTOP News (Sept. 2, 2023), *available online at* https://wtop.com/dc/2023/09/dc-postal-employee-steals-nearly-1-7-million-from-residents-prosecutors-claim (accessed September 21, 2023).

on September 20.  The ticket was purchased using a card in the name of someone other than Muchimba.  Law enforcement immediately sought an arrest warrant for the defendant, which this Court issued later on September 19.  The defendant was arrested on that warrant at the airport on September 20 just before he boarded his flight to Zambia.  At the time of his arrest, the defendant had in his luggage $2,000 in U.S. currency.  He was also carrying a passport newly-issued by Zambia on July 19, 2023. (Ex. 5.)

## APPLICABLE LEGAL PRINCIPLES

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).  The Bail Reform Act ("BRA") requires the judicial officer to assess various factors, as described below, before releasing or detaining a defendant. 18 U.S.C. § 3142(g).  The Court shall "take into account the available information concerning "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

## ARGUMENT

As discussed further below, the statutory factors in 18 U.S.C. § 3142(g) weigh in favor of the pretrial detention of the defendant.  The crimes charged in the Complaint are serious, the evidence against the defendant is compelling, and the defendant simply cannot be relied upon to appear before the Court for future proceedings.

## I.      The Nature and Circumstances of the Offense Charged

Without question, the offenses described in the Complaint are serious and carry substantial penalties.  The number of checks stolen by the defendant and deposited into accounts that he controlled is staggering.  (Ex. 6.)  The government could potentially seek to indict the defendant on more than 90 counts of bank fraud and mail theft—one count for each check that the defendant misappropriated and fraudulently deposited into his own account.  Each count of bank fraud carries a maximum sentence of 30 years of incarceration and a fine of up to $1 million.[4]  And each count of mail theft carries an additional penalty of up to five years of incarceration.  If convicted at trial of only one count of bank fraud in violation of 18 U.S.C. § 1344, a conservative assessment of the defendant's exposure under the U.S. Sentencing Guidelines would be as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1) | Loss Amount: $1.6 million | +16 |
| U.S.S.G. § 2B1.1(b)(2)(a)(i) | More than 10 victims | +2 |
| U.S.S.G. § 2B1.1(b)(1) | Sophisticated means | +2 |
| U.S.S.G. § 3B1.1(c) | Organizer; less than five participants | +2 |
| | TOTAL OFFENSE SCORE: | 29 |

With a total offense score of 29—and assuming the defendant has no criminal history points—the likely range for a guideline-compliant sentence would be 87 to 108 months' incarceration (Zone D).  These substantial penalties weigh in favor of detention.

## II.      The Weight of the Evidence

The government's evidence against the defendant is compelling. There is little doubt that the defendant deposited an enormous number of misappropriated checks into bank accounts that

---

[4] Although not referenced in the Complaint, every financial transaction with a check that the defendant stole could also constitute a separate count of money laundering,  *See* 18 U.S.C. §§ 1956, 1957.

he directly controlled.  (Ex. 6.)  The earliest of these illicit deposits occurred on December 23, 2020, and continued until just days before the defendant was placed in off-duty status without pay. (Ex. 6.)  Indeed, Muchimba appears in multiple bank surveillance photographs—often in his U.S. Postal Service work clothes—conducting ATM transactions with the proceeds of his crime.  (Aff. ¶¶ 10-11.)  The defendant had access to the checks by virtue of his position as a mail carrier, and misappropriated checks from customers on his own delivery route.  (Aff. ¶¶ 5-6.)

The government submits that the weight of this evidence, the second statutory factor, further counsel in favor of detention.

### III.    The History and Characteristics of the Defendant

The third factor in section 3142(g) considers, among others, a detainee's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, [and] criminal history[.]"  18 U.S.C. § 3142(g)(3).

The defendant's attempt to flee criminal prosecution for this crime should weigh heavily in favor of his detention.  Muchimba certainly knew the seriousness of the charges that could be brought against him.  The government explained those possible charges to Muchimba in a face-to-face meeting at the U.S. Attorney's Office with his counsel on June 22, 2023.  At the time of that meeting, law enforcement maintained custody of Muchimba's personal identity documents which had been seized during the search at Muchimba's home.  (Ex. 03.)  However, shortly after that meeting, the defendant obtained a new passport from the Republic of Zambia—issued July 19 (Ex. 5).  Then, after a newspaper reporter contacted Muchimba about the civil forfeiture matter (Ex. 4), the government learned that the defendant had booked travel to Zambia and arrested him at the airport before he could board his flight.  Rather than accepting responsibility for the crime, the

defendant hoped to avoid all to hold him accountable by obtaining a new non-U.S. passport and attempting to flee to a foreign country from which extradition might not be possible.[5]

But there are other circumstances that demonstrate that the defendant cannot be trusted. For example, the defendant has quite obviously lied in his claim against the funds seized from his bank account by attesting—under penalty of perjury—that he has a "valid, good faith, and legally recognizable" interest in the funds in that bank account.  (Ex. 2 at 8.)  Muchimba stole that money which should be returned to victims who were entitled to those payments.

The facts before the Court also reveal that the defendant lied in his application to become a naturalized citizen.  In the process of becoming a naturalized, Muchimba was required to attest in September 2021 that he had never "committed, assisted in committing, or attempted to commit, a crime or offense for which [he was] NOT arrested."  (Ex. 7 at 2.)  However, at that time, Muchimba had already stolen and deposited into his accounts no less than twenty-eight checks from postal customers.[6]

### IV.    The Danger to any Person and the Community

The government acknowledges that the defendant has been charged by Complaint only with non-violent crimes.  However, the seriousness of the crimes at issue, the strength of the government's evidence, his personal characteristics, and the defendant's now-thwarted plans to flee from prosecution counsel in favor of his detention.

---

[5] Zambia became independent from the United Kingdom in 1964.  While the 1931 Extradition Treaty between the United States and the United Kingdom is in force between the United States and Zambia, its use has been infrequent.

[6] The defendant's false attestation may also subject him to prosecution for unlawful procurement of naturalization in violation of 18 U.S.C. § 1425.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should order that the defendant be detained pending further proceedings in this matter because there are no conditions or combination of conditions that can prevent his flight.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: _____
JOHN W. BORCHERT (Bar No. 472824)
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, NW
Washington, D.C.  20530
(202) 252-7679
john.borchert@usdoj.gov

September 21, 2023

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of September 2023, I caused a copy of the foregoing

to be served on counsel for the defendant, Dwight Crawley, Esq.

_____
JOHN W. BORCHERT
Assistant United States Attorney